**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS FOR THE NINTH CIRCUIT

UNITED STATES OF AMERICA,
*Plaintiff-Appellant*,

v.

DUANE NISHIIE, AKA Suh Jae Hon,
*Defendant-Appellee.*

No. 19-10405

D.C. No.
1:17-cr-00550-
SOM-1

OPINION

Appeal from the United States District Court
for the District of Hawaii
Susan O. Mollway, District Judge, Presiding

Argued and Submitted January 15, 2021
San Francisco, California

Filed May 12, 2021

Before: Mary M. Schroeder, Jay S. Bybee, and
Ryan D. Nelson, Circuit Judges.

Opinion by Judge R. Nelson;
Concurrence by Judge Schroeder

## SUMMARY*

### Criminal Law

The panel reversed the district court's order dismissing as time barred seven non-conspiracy criminal counts, and remanded for further proceedings, in a case in which the indictment alleges that Duane Nishiie engaged in a scheme seeking payments in exchange for steering the award of Department of Defense contracts for infrastructure, engineering, and construction projects in Korea.

The seven non-conspiracy counts, which were based on alleged activity that occurred prior to September 21, 2012, would be time barred absent a suspension—pursuant to Wartime Suspension of Limitations Act (WSLA), 18 U.S.C. § 3287—of the running of the five-year statute of limitations set forth in 18 U.S.C. § 3282(a).

The appeal raised a question of first impression: which of the three categories of offenses under the WSLA—fraud, property, or contract—is modified by a clause requiring a nexus between the charged criminal conduct and a specific, ongoing war or congressional authorization of military force.

After considering the WSLA's plain language and structure, well-established canons of statutory construction, and the WSLA's amendment history and context, the panel concluded that the WSLA's restrictive-relative clause does not modify the first offense category "involving fraud or attempted fraud" or the second offense category involving

* This summary constitutes no part of the opinion of the court. It has been prepared by court staff for the convenience of the reader.

"any real or personal property of the United States." The panel held that the running of any statute of limitations applicable to the WSLA's fraud and property offense categories—offense categories under which Nishiie was charged—is therefore suspended, whether or not a nexus exists between these offenses and either war or "authorized use of the Armed Forces."

Concurring, Judge Schroeder agreed that the district court's judgment must be reversed, but disagreed with the majority that any canon of statutory construction aids this court's decision. What persuaded Judge Schroeder that the suspension restriction applies only to crimes related to contracts (and not to fraud and property crimes) is that the contract category and the restrictive clause were enacted together in July 1944 and have stayed together despite subsequent amendments reordering the list of crimes within the WSLA.

## COUNSEL

Francesco Valentini (argued), Trial Attorney, Appellate Section; Robert A. Zink, Acting Deputy Assistant Attorney General; Brian C. Rabbit, Acting Assistant Attorney General; Richard B. Evans, Peter M. Nothstein, and Erica O'Brien Waymack, Trial Attorneys, Public Integrity Section; Criminal Division, United States Department of Justice, Washington, D.C.; for Plaintiff-Appellant.

De Anna S. Dotson (argued), Dana Point, California, for Defendant-Appellee.

**OPINION**

R. NELSON, Circuit Judge:

This appeal raises a question of first impression: which of the three categories of offenses under the Wartime Suspension of Limitations Act ("WSLA"), 18 U.S.C. § 3287—fraud, property, or contract—is modified by a clause requiring a nexus between the charged criminal conduct and a specific, ongoing war or congressional authorization of military force. If the WSLA's war nexus clause—"which is connected with or related to the prosecution of the war or directly connected with or related to the authorized use of the Armed Forces"—applies, then the criminal charges against Duane Nishiie are time barred. The district court held the WSLA's war nexus clause modifies both the fraud and property offense categories, meaning the seven criminal counts against Nishiie were time barred. Based upon the WSLA's text, history, and context, however, we hold that the war nexus clause modifies only the third offense category—not at issue here. Accordingly, we reverse the district court's dismissal of Nishiie's seven criminal counts and remand for further proceedings.

I

Beginning around 2005, the governments of the United States and the Republic of Korea ("Korea") commenced a joint program to relocate and consolidate military bases and installations located in Korea. Between approximately 2006 and 2012, Duane Nishiie is alleged to have worked as a contracting officer in Korea for the United States Department of Defense ("DOD").

On September 21, 2017, a federal grand jury charged Nishiie in a nine-count indictment based on alleged conduct

originating in Korea.  According to the indictment, between 2008 and 2015, Nishiie engaged in a scheme seeking payments in exchange for steering the award of multi-million-dollar contracts for infrastructure, engineering, and construction projects in Korea.  The indictment further alleged that around 2012 Company A employed Nishiie, after his resignation from the DOD, to lobby DOD to favor Company A for projects in Korea.  To facilitate this, Nishiie allegedly accepted bribes, received kickbacks, laundered money, made false reporting disclosures, concealed evidence, and worked with a co-conspirator, among other conduct.

Nishiie was charged with conspiracy to commit bribery and honest-services fraud (18 U.S.C. § 371); bribery (18 U.S.C. §§ 2; 201(b)(2)); three counts of honest-service wire fraud (18 U.S.C. §§ 1343; 1346); conspiracy to commit money laundering (18 U.S.C. § 1956(h)); and three counts of making a false statement (18 U.S.C. § 1001).[1]  The seven non-conspiracy criminal counts at issue in this appeal were based on alleged activity that occurred prior to September 21, 2012, and therefore would have been time barred absent a suspension of the running of the applicable five-year statute of limitations pursuant to the WSLA.  The United States also sought forfeiture of property under 18 U.S.C. §§ 981(a), 982(a), and 2461(c).

Nishiie moved to dismiss the indictment on the ground that the charges were barred by the applicable statute of

---

[1] Some of the charges were also brought against co-defendant Seung-Ju Lee, a purported officer in the Korean Ministry of Defense's procurement arm.  The two conspiracy counts, not at issue in this appeal, are based on Nishiie's alleged actions in concert with Lee and other individuals.

limitations. *See* 18 U.S.C. § 3282(a). According to Nishiie, "[t]he completion dates, that initiated the running of the statute of limitations" of the following counts in the indictment are: "Count Two – May 2012, Count Three – September 18, 2008, Count Four – March 20, 2009, Count Five – April 6, 2010, Count Seven – February 9, 2010, Count Eight – January 18, 2011, Count Nine – January 13, 2012." Under the WSLA, certain charges suspend the running of any statute of limitations applicable to any offense: "involving fraud or attempted fraud against the United States . . . whether by conspiracy or not" (fraud offense); or "committed in connection with the acquisition, care, handling, custody, control or disposition of any real or personal property of the United States" (property offense); or "committed in connection with the negotiation, procurement, award . . . of any contract, subcontract, or purchase order which is connected with or related to the prosecution of the war or directly connected with or related to the authorized use of the Armed Forces" (contract offense). 18 U.S.C. § 3287.

This restrictive relative clause (also called the limiting "which" clause)—"which is connected with or related to the prosecution of the war or directly connected with or related to the authorized use of the Armed Forces"—follows a series of three enumerated offense categories. The "which" clause undisputedly modifies the third category for contract offenses. Whether the "which" clause also modifies the remote fraud and property offense categories ultimately is dispositive of the question here. In short, if the limiting "which" clause modifies the fraud and property offense categories, the seven non-conspiracy counts against Nishiie are time barred. If the "which" clause does not modify the fraud and property offense categories, the running of any applicable statute of limitations has been suspended and the

charges are not time barred.  The relevant first sentence of the WSLA provides:

> When the United States is at war or Congress has enacted a specific authorization for the use of the Armed Forces, as described in section 5(b) of the War Powers Resolution (50 U.S.C. 1544(b)), the running of any statute of limitations applicable to any offense (1) involving fraud or attempted fraud against the United States or any agency thereof in any manner, whether by conspiracy or not, or (2) committed in connection with the acquisition, care, handling, custody, control or disposition of any real or personal property of the United States, or (3) committed in connection with the negotiation, procurement, award, performance, payment for, interim financing, cancelation, or other termination or settlement, of any contract, subcontract, or purchase order which is connected with or related to the prosecution of the war or directly connected with or related to the authorized use of the Armed Forces, or with any disposition of termination inventory by any war contractor or Government agency, shall be suspended until 5 years after the termination of hostilities as proclaimed by a Presidential proclamation, with notice to Congress, or by a concurrent resolution of Congress.

18 U.S.C. § 3287.

Nishiie argues the suspension of the running of any statute of limitations applicable to either the fraud or property offense categories is not triggered because the "United States was not at war nor had a specific authorization for the use of armed forces been declared for South Korea during the time applicable to the facts of this case." According to Nishiie, a nexus to war is required to trigger the suspension of the running of any applicable statute of limitations under the WSLA's fraud and property offense categories, similar to the contract offense category. Consequently, Nishiie argues absent "war or authorized use of Armed Forces in any conflict in South Korea during the time Nishiie was working in South Korea," the statute of limitations for "Counts Two, Three, Four, Five, Seven, Eight, and Nine, all expired prior to the filing of the Indictment on September 21, 2017."

The United States argues the indictment is timely because the "WSLA has never contained a requirement that offenses falling under its first two categories be substantively related to the hostilities." It reads the WSLA's limiting "which" clause to only modify the contract offense category, and not the fraud and property offense categories. Under this interpretation, to trigger suspension of the running of any applicable statute of limitations, no substantive nexus is required between either fraud or property offense categories and the prosecution of war or authorization of military force.

The district court summarized the issue: if the limiting "which" clause "applies to all three categories" of offenses—fraud, property, and contract—then "at least some of the charges against Defendant Duane Nishiie may be time-barred. If, on the other hand, the modifier applies only to the closest category, the limitations periods applicable to

the charges in this case are tolled, and all of the charges against Nishiie are timely."

The district court held that the "which" clause is a "modifier [that] applies to all three categories" based on the language of the statute, its legislative history, and the rule of lenity. Therefore, the district court held that the statute of limitations was not tolled as to the seven non-conspiracy criminal counts alleged in the indictment, as there was not a nexus between the war and the alleged crimes. On this basis, the district court dismissed Counts Two, Three, Four, Five, Seven, Eight, and Nine as untimely.[2] The district court noted the United States's "conten[tion] that Nishiie's alleged fraud with respect to steering military base contracts in Korea falls under the first offense category, which involves fraud-based crimes, rather than the more specific contract-based crimes in the third category." Consequently, according to the district court, the United States "will likely never characterize any offense it charges as falling under" the third offense category to "avoid the impact of the 'which' clause."

The United States appealed the district court's order dismissing the seven non-conspiracy criminal counts, arguing the exclusive application of the limiting "which" clause to the WSLA's third offense category or "offenses that involve wartime contracts" is the correct reading. We

---

[2] The district court did not dismiss Counts One and Six, the conspiracy counts, as it "question[ed] its authority to dismiss Counts One and Six" because it "would require . . . grant[ing] a motion that no party ha[d] filed." "While the [district] court agree[d] that the applicable statutes of limitations would bar Counts One and Six had those counts alleged conspiracies that ended by April 30, 2012, that [wa]s not the charge before th[e] [district] court."

have jurisdiction under 18 U.S.C. § 3731.  *See United States v. Russell*, 804 F.2d 571, 573 (9th Cir. 1986).

## II

We review the district court's dismissal of Nishiie's seven counts on statute-of-limitations grounds de novo.  *See Mills v. City of Covina*, 921 F.3d 1161, 1165 (9th Cir. 2019).

## III

The WSLA's plain language and structure, well-established canons of statutory construction, and the WSLA's amendment history and context, show the limiting "which" clause at issue does not modify either the fraud or property offense categories.

The Supreme Court has not squarely confronted this question in its few cases interpreting the WSLA.  Because both parties claim favorable precedent from the Court's WSLA jurisprudence, we briefly summarize those cases.  In *Kellogg Brown & Root Servs., Inc. v. United States*, 575 U.S. 650, 655–62 (2015), the Court held that the "text, structure, and history of the WSLA show that the Act applies only to criminal offenses."  Notably, the Court omitted inclusion of the limiting "which" clause when it quoted the statutory text.[3]

---

[3] *See e.g.*, *Kellogg Brown*, 575 U.S. at 657 ("Congress made more changes in 1948.  From then until 2008, the WSLA's relevant language was as follows:

'When the United States is at war the running of any statute of limitations applicable to any offense

In 1953, the Court decided three cases interpreting the WSLA, two of which are informative here. *See United States v. Grainger*, 346 U.S. 235 (1953); *Bridges v. United States*, 346 U.S. 209 (1953); *United States v. Klinger*, 345 U.S. 979 (1953) (per curiam). In *Bridges*, the Court considered whether the WSLA "suspended the running of the general three-year statute of limitations" for three charged offenses of knowingly making and conspiring to make a false statement under oath in a naturalization proceeding, and aiding fraud. 346 U.S. at 211, 221 (footnote omitted). Because the acts occurred in 1945 and the indictment was brought in 1949, the indictment had to be dismissed unless the "general limitation applicable to noncapital offenses" was "suspended or superseded." *Id*. at 215–16. The Court held that the WSLA did not apply because none of the offenses "involve[d] the defrauding of the United States in any pecuniary manner or in a manner concerning property" and precedent interpreting "wartime suspension of limitations authorized by Congress [were] limited strictly to offenses in which defrauding or attempting to defraud the United States is an essential ingredient of the offense charged." *Id*. at 221.

In *Grainger*, a case involving fraudulent attempts to obtain payments from the Commodity Credit Corporation, the Court considered whether the WSLA "suspended the

> (1) involving fraud or attempted fraud against the United States or any agency thereof in any manner, whether by conspiracy or not . . . shall be suspended until three years after the termination of hostilities as proclaimed by the President or by a concurrent resolution of Congress.'").

This is not the first instance the Court has recited the WSLA in this manner.

running of the general three-year statute of limitations as to violations of the false claims clause of the False Claims Act" and "if so, whether the indictments for such offenses, found in 1952, were timely." 346 U.S. at 237 (footnote omitted). The Court held the WSLA tolled the limitations period, which permitted the United States to prosecute, in 1952, False Claim Act offenses committed in 1945 and 1946. *Id.* at 240. The Court also omitted inclusion of the limiting "which" clause when it recited provisions of the WSLA.[4]

Finally, in *United States v. Smith*, the Court held the WSLA "inapplicable to crimes committed after the date of termination of hostilities." 342 U.S. 225, 228 (1952). Prosecution for the crimes charged—forgery and knowingly making a false statement—were barred because the charges were committed after the "date of the proclamation of termination of hostilities." *Id*. at 227. The Court again omitted inclusion of the restrictive relative clause when it quoted the relevant provisions of the WSLA.[5]

---

[4] The Court stated: "The Suspension Act provides that—

'When the United States is at war the running of any statute of limitations applicable to any offense (1) involving fraud or attempted fraud against the United States or any agency thereof in any manner, whether by conspiracy or not * * * shall be suspended until three years after the termination of hostilities as proclaimed by the President or by a concurrent resolution of Congress.'"

*Grainger*, 346 U.S. at 242.

[5] The Court stated:

No Supreme Court or circuit-court decision applying the WSLA definitively answers whether the limiting "which" clause modifies remote antecedents.  *See United States v. DeLia*, 906 F.3d 1212, 1221 n.11 (10th Cir. 2018) (collecting cases).  We do so now in the first instance.

A

"Statutory construction 'is a holistic endeavor,' and, at a minimum, must account for a statute's full text, language as well as punctuation, structure, and subject matter."  *U.S. Nat'l Bank of Oregon v. Indep. Ins. Agents of Am., Inc.*, 508 U.S. 439, 455 (1993) (quoting *United Sav. Assn. of Texas v. Timbers of Inwood Forest Assocs., Ltd.*, 484 U.S. 365, 371 (1988)).  "We begin, as we must, with the text" of

---

> At the time of the alleged offenses the Act read in relevant part: "The running of any existing statute of limitations applicable to any offense against the laws of the United States (1) involving defrauding or attempts to defraud the United States or any agency thereof whether by conspiracy or not, and in any manner, * * * shall be suspended until three years after the termination of hostilities in the present war as proclaimed by the President or by a concurrent resolution of the two Houses of Congress."

*Smith*, 342 U.S. at 226–27 (footnote omitted).  Two 1950s era circuit-court opinions omit the limiting "which" clause: "'When the United States is at war the running of any statute of limitations applicable to any offense (1) involving fraud or attempted fraud against the United States or any agency thereof in any manner, whether by conspiracy or not, [. . .] (3) * * *, shall be suspended . . . .'" *See United States v. Lurie*, 222 F.2d 11, 13 (7th Cir. 1955); s*ee also United States v. Witherspoon*, 211 F.2d 858, 861–62 (6th Cir. 1954) ("Title 18 U.S.C. § 3287, in part, provides: 'When the United States is at war the running of any statute of limitations applicable to any offense (1) involving fraud or attempted fraud against the United States * * * shall be suspended . . .'").

the WSLA. *See Connell v. Lima Corp.*, 988 F.3d 1089, 1097 (9th Cir. 2021). Our "review is guided by well-established rules of statutory interpretation. We 'begin[] with the statutory text, and end[] there as well if the text is unambiguous.'" *Id*. (quoting *BedRoc Ltd., LLC v. United States*, 541 U.S. 176, 183 (2004)).

As amended, and relevant to the charges against Nishiie, the WSLA provides:

> When the United States is at war or Congress has enacted a specific authorization for the use of the Armed Forces, as described in section 5(b) of the War Powers Resolution (50 U.S.C. 1544(b)), the running of any statute of limitations applicable to any offense (1) involving fraud or attempted fraud against the United States or any agency thereof in any manner, whether by conspiracy or not, or (2) committed in connection with the acquisition, care, handling, custody, control or disposition of any real or personal property of the United States, or (3) committed in connection with the negotiation, procurement, award, performance, payment for, interim financing, cancelation, or other termination or settlement, of any contract, subcontract, or purchase order which is connected with or related to the prosecution of the war or directly connected with or related to the authorized use of the Armed Forces, or with any disposition of termination inventory by any war contractor or Government agency, shall be suspended until 5 years after the

termination of hostilities as proclaimed by a
Presidential proclamation, with notice to
Congress, or by a concurrent resolution of
Congress.

18 U.S.C. § 3287.

We recognize the plain language of the WSLA without
resort to canons of construction does not necessarily convey
a clear reading of whether the fraud and property offense
categories are modified by the limiting "which" clause. But
"[a]mbiguity is a creature not of definitional possibilities but
of statutory context." *Brown v. Gardner*, 513 U.S. 115, 118
(1994). Therefore, we resolve any potential ambiguity using
all available tools in a judge's interpretive toolbox.

## B

Ordinary canons of statutory construction support an
unambiguous reading of the WSLA's limiting "which"
clause. *See Valenzuela Gallardo v. Barr*, 968 F.3d 1053,
1063 (9th Cir. 2020). Two syntactic canons are specifically
raised here: the last antecedent canon and the series-qualifier
canon. These canons ostensibly conflict in reaching the
correct interpretation. The last antecedent canon, however,
is most aligned with the WSLA's language and context.

## 1

The last antecedent canon applies in the interpretation of
"statutes that include a list of terms or phrases followed by a
limiting clause." *Lockhart v. United States*, 577 U.S. 347,
351 (2016); *see* A. Scalia & B. Garner, Reading Law: The
Interpretation of Legal Texts 144 (2012) ("Scalia &
Garner"). "The rule reflects the basic intuition that when a
modifier appears at the end of a list, it is easier to apply that

modifier only to the item directly before it." *Lockhart*, 577 U.S. at 351; *see Barnhart v. Thomas*, 540 U.S. 20, 26 (2003). Consistent with the last antecedent canon, the limiting "which" clause would only modify the third category—contract offenses—that immediately precedes it.

Accordingly, as a corollary, neither the fraud nor property offense categories—under which Nishiie was charged—are similarly constrained. *See Lockhart*, 577 U.S. at 351. While it is grammatically possible to read the limiting "which" clause to modify the fraud and property offense categories, the restrictive relative clause is thus best read consistent with the last antecedent canon to only modify the immediately preceding contract offense category. *See Hall v. U.S. Dep't of Agric.*, 984 F.3d 825, 838 (9th Cir. 2020). This is "particularly true where it takes more than a little mental energy to process the individual entries in the list, making it a heavy lift to carry the modifier across them all." *Lockhart*, 577 U.S. at 351. The varied syntax and distinct elements within each category of offense "makes it hard for the reader to carry" the limiting clause across the two remote offense categories. *See id.*

Punctuation also supports the last antecedent canon as the most relevant canon for the WSLA. "The doctrine of the last antecedent, including its observation about the placement of commas, is consistent with general grammatical rules, found outside the legal context, governing restrictive and nonrestrictive (also called 'essential' and 'nonessential') clauses." *State v. Webb*, 927 P.2d 79, 83 (Or. 1996) (Graber, J.) (en banc). As noted by the *Webb* Court, the Chicago Manual of Style contains a reflection of this rule. *See id.* According to The Chicago Manual of Style § 6.27 (17th ed. 2017) (ebook):

A clause is said to be restrictive (or defining) if it provides information that is essential to understanding the intended meaning of the rest of the sentence. Restrictive relative clauses are usually introduced by *that* (or by *who/whom/whose*) and are never set off by commas from the rest of the sentence. . . . A clause is said to be nonrestrictive (or nondefining or parenthetical) if it could be omitted without obscuring the identity of the noun to which it refers or otherwise changing the intended meaning of the rest of the sentence. Nonrestrictive relative clauses are usually introduced by *which* (or *who/whom/whose*) and are set off from the rest of the sentence by commas.

No comma separates the limiting "which" clause from the third offense category in the current version of the WSLA: "committed in connection with the negotiation . . . of any contract, subcontract, or purchase order which is connected with or related to the prosecution of the war or directly connected with or related to the authorized use of the Armed Forces." 18 U.S.C. § 3287. Given the restrictive relative clause is not set off from the immediately preceding category by a comma, common grammatical rules suggest that Congress intentionally tied it to the last antecedent.

2

On the other hand, application of the series-qualifier canon is inappropriate given the WSLA's first paragraph contains just a single 187-word sentence. The series-qualifier canon intuitively comports with casual, spoken English, but not with complex criminal legislation. Under

this syntactic canon, "[w]hen there is a straightforward, parallel construction that involves all nouns or verbs in a series," then a postpositive modifier "normally applies to the entire series." Scalia & Garner at 147. This canon is inadvisable here for several reasons. The text within each category of offense does not present a parallel construction. One need look no further than the district court's masterclass sentence diagramming, *see United States v. Nishiie*, 421 F. Supp. 3d 958, 966–67 (D. Haw. 2019), to recognize the complexity of the WSLA's language. The density and intricacy of the WSLA's text also counsel against application of the series-qualifier canon here.

Some examples underscore the general primacy of the last antecedent canon for a multi-pronged disjunctive statute, like the WSLA, over the series-qualifier canon. Spoken or written statements presenting an uncomplicated and short series of nouns or phrases are more readily interpreted using the series-qualifier canon. Consider the following examples. In the "phrase 'no person shall be deprived of life, liberty, or the pursuit of happiness, without due process of law,' the phrase 'without due process of law' modifies all three terms." *Enron Creditors Recovery Corp. v. Alfa, S.A.B. de C.V.*, 651 F.3d 329, 335 (2d Cir. 2011). As another example: "Imagine a friend told you that she hoped to meet 'an actor, director, or producer involved with the new Star Wars movie.' You would know immediately that she wanted to meet an actor from the Star Wars cast—not an actor in, for example, the latest Zoolander." *Lockhart*, 577 U.S. at 362 (Kagan, J., dissenting). Likewise, "[s]uppose a real estate agent promised to find a client 'a house, condo, or apartment in New York.' Wouldn't the potential buyer be annoyed if the agent sent him information about condos in Maryland or California?" *Id*. These straightforward and conversational statements require no mental gymnastics. In such plain and

parallel sentences, the series-qualifier canon makes sense. But application of the series qualifier canon does not apply given the complexity of the WSLA's language.

3

The disjunctive "or" as used in the WSLA is also instructive. "Canons of construction ordinarily suggest that terms connected by a disjunctive be given separate meanings, unless the context dictates otherwise; here it does not." *Reiter v. Sonotone Corp.*, 442 U.S. 330, 339 (1979). "As a general rule, the use of a disjunctive in a statute indicates alternatives and requires that they be treated separately." *Azure v. Morton*, 514 F.2d 897, 900 (9th Cir. 1975). Use of the disjunctive form here—"or" after the first and second offense categories—"tends to cut off" the "which" clause so that its "backward reach is limited." *See* Scalia & Garner at 149. While "statutory context can overcome the ordinary, disjunctive meaning of 'or,'" the WSLA's context—using the "or" twice—"favors the ordinary disjunctive meaning of 'or.'" *See Encino Motorcars, LLC v. Navarro*, 138 S. Ct. 1134, 1141 (2018).[6] The relevant text—a single 187-word sentence—simply does not favor carryover modification given the repetitive use of a determiner—"or"—before the third offense category. *See* Scalia & Garner at 148.[7]

---

[6] "The ordinary and contemporary meaning of the term is sometimes 'either . . . or . . . but not both' and other times 'and/or.' We have consistently defined 'or' as indicating separate alternatives." *United States v. Gallegos*, 613 F.3d 1211, 1215 (9th Cir. 2010).

[7] Consider an example in miniature: Suppose a parent instructs a child she can ride a scooter, a skateboard, *or* a bike with a helmet. The

C

Ultimately, "statutory language must be construed as a whole." *Shaw v. Bank of Am. Corp.*, 946 F.3d 533, 539 (9th Cir. 2019) (citation omitted).   To apply the contested limiting "which" clause to modify the first and second offense categories would contravene not only ordinary canons of construction but also the WSLA's structure.  The location of both the fraud and property offense categories structurally precede the contract offense category.  Consider, *arguendo*, Nishiie's proposed interpretation.  His reading would invite additional interpretative conundrums than presently exist.  We would construe, for example, the first offense category as the following: "involving fraud or attempted fraud against the United States or any agency thereof in any manner, whether by conspiracy or not, which is connected with or related to the prosecution of the war or directly connected with or related to the authorized use of the Armed Forces." *See* 18 U.S.C. § 3287.  This begs the question: does the limiting "which" clause modify the immediately preceding phrase, "whether by conspiracy or not," or does it modify only "fraud and attempted fraud"?  Excising the restrictive relative clause and grafting it to remote antecedents ultimately renders an illogical construction in the context of the WSLA: a series of disjunctive clauses containing complex elements.

---

modifier "with a helmet" is best understood as applying to each activity. Alternatively, suppose the parent instructs the child she can ride a scooter, *or* a skateboard, *or* a bike with a helmet.  With the additional disjunctive—an "or" before "a skateboard"—the helmet modifier is best understood as requiring a helmet for bike riding alone.  In other words, the second instruction would be best understood to mean the child can ride a scooter, or she can ride a skateboard, or she can ride a bike with a helmet.

Moreover, as characterized by the district court, this limiting "which" clause is not only situated within the third offense category but also nestled between another limiting clause that corresponds to contractual affairs: "or with any disposition of termination inventory by any war contractor or Government agency." Whether to graft this limiting clause concerning "termination inventory" to modify the first and second offense categories thus raises more interpretative problems. Our "reading avoids jumping backward over multiple prepositional phrases" in "favor of a more natural reading." *See Hall*, 984 F.3d at 838.

D

"In addition to exploring the text of the statute itself, we examine the relevant statutory context." *Cnty. of Amador v. U.S. Dep't of the Interior*, 872 F.3d 1012, 1022 (9th Cir. 2017). The statutory context and history of the WSLA provide equally strong support for the conclusion, *see Kellogg Brown*, 575 U.S. at 659, that no nexus is required between either the fraud or property offense categories and the limiting "which" clause. Statutory history, particularly from 1944, "conclusively refutes" the interpretation advanced by Nishiie.[8] *See Powerex Corp. v. Reliant Energy Servs., Inc.*, 551 U.S. 224, 231 (2007).

"The WSLA's roots extend back to the time after the end of World War I. Concerned about war-related frauds, Congress in 1921 enacted a statute that extended the statute of limitations for such offenses." *Kellogg Brown*, 575 U.S.

---

[8] The district court's analysis, though comprehensively reasoned, overlooks statutory history between 1940 and 1950 that strongly suggests Congress unambiguously intended our construction. This oversight may well be because the parties did not flesh out the statutory history below. But this history buttresses our conclusion.

at 656. The 1921 Act "provided as follows: '[I]n offenses involving the defrauding or attempts to defraud the United States or any agency thereof . . . and now indictable under any existing statutes, the period of limitations shall be six years.'" *Id*. (quoting Act of Nov. 17, 1921, ch. 124, 42 Stat. 220) (emphasis omitted). "[T]he 1921 Act was a temporary measure enacted to deal with problems resulting from the First World War." *Id.* at 1978.

"In 1942, after the United States entered World War II, Congress enacted a similar suspension statute. This law, like its predecessor, applied to fraud 'offenses . . . now indictable under any existing statutes,' but this time the law suspended 'any' 'existing statute of limitations' until the fixed date of June 30, 1945." *Id*. at 1975 (citation and internal quotation marks omitted). The predecessor statute from 1942 read in relevant part:

> That the running of any existing statute of limitations applicable to offenses involving the defrauding or attempts to defraud the United States or any agency thereof, whether by conspiracy or not, and in any manner and now indictable under any existing statutes, shall be suspended until June 30, 1945, or until such earlier time as the Congress by concurrent resolution, or the President, may designate.

Act of Aug. 24, 1942, ch. 555, 56 Stat. 747–48. Only one offense category was identified in the 1942 version: "defrauding or attempts to defraud the United States." Absent from the 1942 statute was a comparable "which" clause concerning the "prosecution of the war" or "authorized use of the Armed Forces."

Successive amendments starting in 1944 introduced the "which" clause and added additional offense categories. The position of the limiting "which" clause, however, remained consistent throughout subsequent amendments despite reordering of the alternative offense categories. This strongly suggests the war nexus clause was intended to limit exclusively what was then the second and now the third offense category—for contract offenses. The earlier 1944 version read in relevant part:

> The running of any existing statute of limitations applicable to any offense against the laws of the United States . . . (2) committed in connection with the negotiation, procurement, award, performance, payment for, interim financing, cancelation or other termination or settlement, of any contract, subcontract, or purchase order which is connected with or related to the prosecution of the present war, or with any disposition of termination inventory by any war contractor or Government agency, shall be suspended . . . .

Act of July 1, 1944, ch. 358, §19(b), 58 Stat. 667. This July 1944 amendment introduced a limiting "which" clause nearly identical with the modern statute—"which is connected with or related to the prosecution of the present war"—along with a new contract offense category. Another limiting clause—"or with any dispositiion of termination inventory by any war contractor or Government agency"—was nestled within the contract offense category.

A subsequent October 1944 amendment read in relevant part:

> The running of any existing statute of limitations applicable to any offense . . . (2) committed in connection with the negotiation, procurement, award, performance, payment for, interim financing, cancelation or other termination or settlement, of any contract, subcontract, or purchase order which is connected with or related to the prosecution of the present war, or with any disposition of termination inventory by any war contractor or Government agency, or (3) committed in connection with the care and handling and disposal of property under the Surplus Property Act of 1944 . . . .

Act of Oct. 3, 1944, ch. 479, 58 Stat. 781. Because sequential changes in predecessor statutes best reflect congressional intent, the cumulative effect of these 1942 and 1944 amendments resolve any ambiguity about the reach of the restrictive relative clause with respect to the fraud and property offense categories in the current version of the WSLA. That the contested "which" clause immediately and consistently follows one offense category—namely contract offenses—across predecessor versions of the WSLA is a strong indication of its plain meaning.

Placement of the limiting "which" clause in the October 1944 Act is the historical lynchpin that resolves any ambiguity about whether the "which" clause only modifies the contract offense category. Indeed, the textual assignment in the October 1944 Act of the clause—"which is connected with or related to the prosecution of the present war"—to immediately follow the contract category (then the second offense category) makes it impossible to read the clause as

modifying either the then-first (fraud) or certainly the then-third (property) offense categories.

In 1948, Congress made additional changes and codified the WSLA in Title 18 of the United States Code. This 1948 codification, part of a broader codification of the Criminal Code generally, was titled the "Wartime Suspension of Limitations." It read in relevant part:

> When the United States is at war the running of any statute of limitations applicable to any offense . . . (3) committed in connection with the negotiation, procurement, award, performance, payment for, interim financing, cancelation, or other termination or settlement, of any contract, subcontract, or purchase order which is connected with or related to the prosecution of the war, or with any disposition of termination inventory by any war contractor or Government agency, shall be suspended until three years after the termination of hostilities as proclaimed by the President or by a concurrent resolution of Congress.

WSLA, Pub. L. No. 80-772, § 3287, 62 Stat. 683, 828 (1948). Of importance to our analysis, during the codification process Congress reordered the offense categories as fraud, property, and then contract. While the codification process placed contract offenses as the third category, it also confined the limiting "which" clause only to the contract offense. If Congress intended the scope of the limiting "which" clause, post-codification, to deviate from apparent meaning accrued over time, it would have had to clearly express so. Congress did not do that.

To the contrary, "absent [substantive] comment it is generally held that a change during codification is not intended to alter the statute's scope." *See Walters v. Nat'l Ass'n of Radiation Survivors*, 473 U.S. 305, 318 (1985); *see also Tidewater Oil Co. v. United States*, 409 U.S. 151, 162 (1972) (stating "a well-established principle governing the interpretation of provisions altered in the 1948 revision is that 'no change is to be presumed unless clearly expressed'") (citation omitted); *Keene Corp. v. United States*, 508 U.S. 200, 209 (1993) (same). And with respect to the "1948 revision of the Criminal Code, the House and Senate Reports caution repeatedly against reading substantive changes into the revision." *See Muniz v. Hoffman*, 422 U.S. 454, 474 (1975); *see also Fourco Glass Co. v. Transmirra Prods. Corp.*, 353 U.S. 222, 227 (1957) ("For it will not be inferred that Congress, in revising and consolidating the laws, intended to change their effect, unless such intention is clearly expressed."). Because "[f]undamental changes in the scope of a statute are not typically accomplished" with "subtle" moves, *Kellogg Brown*, 575 U.S. at 661, the codification does not alter congressional meaning evident from prior history, particularly the October 1944 Act. Repetitive construction of the limiting "which" clause to follow only the contract offense category, or the immediately preceding clause, is flatly inconsistent with any carryover modification to the two remote offense categories.

E

Our reading of the WSLA is also consistent with a nearly identical statute of limitations enacted in 1950 and codified in 1956 as part of the Uniform Code of Military Justice

("UCMJ").[9] *See* 10 U.S.C. § 843(f). That this statutory comparison is not a textual cross-reference within the same statute does not weaken its persuasiveness. *See, e.g.*, *Brown*, 513 U.S. at 118. "[W]hen Congress uses the same language in two statutes having similar purposes, particularly when one is enacted shortly after the other, it is appropriate to presume that Congress intended that text to have the same meaning in both statutes." *Smith v. City of Jackson, Miss.*, 544 U.S. 228, 233 (2005). "[C]ourts generally interpret similar language in different statutes in a like manner when the two statutes address a similar subject matter." *United States v. Novak*, 476 F.3d 1041, 1051 (9th Cir. 2007).

Unamended since its 1950 enactment, Article 43(f) of the UCMJ reads in full:

> When the United States is at war, the running of any statute of limitations applicable to any offense under this chapter—
>
> (1) involving fraud or attempted fraud against the United States or any agency thereof in any manner, whether by conspiracy or not;
>
> (2) committed in connection with the acquisition, care, handling, custody, control, or disposition of any real or personal property of the United States; or

---

[9] *See* Art. 43. Statute of Limitations, Pub. L. No. 81-504, ch. 162, 64 Stat. 107, 121–22 (1950); Pub. L. No. 84-1028, ch. 1041, § 843, 70A Stat. 1, 51–52 (1956).

(3) committed in connection with the negotiation, procurement, award, performance, payment, interim financing, cancellation, or other termination or settlement, of any contract, subcontract, or purchase order which is connected with or related to the prosecution of the war, or with any disposition of termination inventory by any war contractor or Government agency;

is suspended until three years after the termination of hostilities as proclaimed by the President or by a joint resolution of Congress.

10 U.S.C. § 843(f). In all relevant respects, Article 43(f) mirrors the codified version of the WSLA. And it was adopted just two years after the WSLA was codified in the current form. Beyond sharing a similar purpose with the WSLA, lengthening a statute of limitations, § 843(f) uses semi-colon punctuation, separated and numbered prongs identifying offense categories, and grammatical space between each category. Its construction of the "which" clause to immediately follow the contract offense category reinforces our unambiguous interpretation of the WSLA. Congress could not have contemplated substantive distinctions between practically identical and nearly contemporaneous statutes of limitations.

\*          \*          \*

Given this statutory history and context, complemented by canons of construction consistent with the WSLA's plain text and structure, we have little trouble concluding that the WSLA's "which" clause unambiguously modifies the third

category for contract offenses—not at issue here. As such, the fraud offense category—under which the United States charged Nishiie—and the property offense category are not modified by this war nexus clause.[10]

IV

We recognize the WSLA "creates an exception to a longstanding congressional 'policy of repose' that is fundamental to our society and our criminal law." *Bridges*, 346 U.S. at 215–16. The WSLA suspends already-running statutes of limitation when its conditions are met. As we detail, the WSLA unambiguously tolls the statute of limitations during any period of war or authorization of the use of the Armed Forces. We are acutely aware—and somewhat concerned—that this interpretation, while legally correct, may effectively toll the statute of limitations for offenses under the WSLA for 20, 30, even 40 plus years. In large part that results from the expansion of war powers far beyond what they were when the WSLA was codified in 1948. Any policy concern for subjecting defendants to

---

[10] Nishiie argues that "some ambiguity" in the WSLA counsels for application of the "rule of lenity." But the lenity principle is used to "resolve ambiguity in favor of the defendant only 'at the end of the process of construing what Congress has expressed' when the ordinary canons of statutory construction have revealed no satisfactory construction." *Lockhart*, 577 U.S. at 376 (quoting *Callanan v. United States,* 364 U.S. 587, 596 (1961)). As explained above, *see supra* Part III, the WSLA is unambiguous. No "grievous ambiguity or uncertainty" in the WSLA arises "after considering text, structure, [and] history" such that we must guess as to what Congress intended. *See Barber v. Thomas*, 560 U.S. 474, 488 (2010) (internal citations and quotation marks omitted). Thus, the rule of lenity has no application here.

decades-long liability is subordinated to the WSLA's unambiguous language.

"We sit as judges, not as legislators . . ." *California v. Ramos*, 463 U.S. 992, 1014 (1983). "It is hardly this Court's place to pick and choose among competing policy arguments . . . selecting whatever outcome seems to us most congenial, efficient, or fair. Our license to interpret statutes does not include the power to engage in . . . judicial policymaking." *Pereida v. Wilkinson*, 141 S. Ct. 754, 766–67 (2021). Inducing perpetual limbo for potential criminal defendants under the WSLA is presumably not what Congress had contemplated. Nor did the 1940s era Congress likely anticipate the transformation of warfare. Our interpretation may seem like a gratuitous reading in light of modern criminal justice reform. "But our public policy is fixed by Congress, not the courts." *Bridges*, 346 U.S. at 231 (Reed, J., dissenting). Readily apparent from the WSLA's amendment history is that Congress is fully capable of changing course and cabining the reach of any statute of limitations if it decides public policy warrants such a change. *See Ramos v. Wolf*, 975 F.3d 872, 900 (9th Cir. 2020) (R. Nelson, J., concurring) ("Our sole responsibility as Article III judges is narrow—'to say what the *law* is.'") (quoting *Marbury v. Madison*, 5 U.S. (1 Cranch) 137, 177, 2 L.Ed. 60 (1803)); *id*. ("By constitutional design, the branch that is qualified to establish . . . policy and check any excesses in the implementation of that policy is Congress.") (citing *City & Cnty. of San Francisco v. U.S. Citizenship & Immigr. Servs.*, 944 F.3d 773, 809 (9th Cir. 2019) (Bybee, J., concurring)).

Indeed, Congress has seemingly blessed this lengthy tolling even given the modern expansion of the WSLA's war powers. When Congress amended the WSLA in 2008,

Congress changed the WSLA's triggering event, providing that suspension of the running of any applicable statute of limitations was available not only "[w]hen the United States is at war" but also when Congress has enacted a specific authorization for the "use of the Armed Forces." Congress also extended the suspension period from three to five years. Pub. L. 110-417, § 855, 122 Stat. 4545 (2008). These patterns provide a concert of clarity sustaining our unambiguous interpretation of the WSLA. At the time of these 2008 amendments, Congress had twice authorized the use of the Armed Forces since 2000: Authorization for Use of Military Force, Pub. L. No. 107-40, 115 Stat. 224 (2001); Authorization for Use of Military Force Against Iraq Resolution of 2002, Pub. L. No. 107-243, 116 Stat. 1498 (2002). These triggering events under the WSLA effectively suspend the running of any statute of limitations applicable to the fraud and property offense categories until five years after the termination of hostilities is pronounced "by a Presidential proclamation, with notice to Congress, or by a concurrent resolution of Congress." *See* 18 U.S.C. § 3287. So, at the time of the 2008 amendments, Congress was already aware the WSLA's statute of limitations was tolled for 13 years and likely would be tolled for longer. Since no termination of hostilities has been announced, the suspension of the running of applicable statute of limitations now approaches two decades or more. *See United States v. Melendez-Gonzalez*, 892 F.3d 9, 15 (1st Cir. 2018); *United States v. Frediani*, 790 F.3d 1196, 1200–01 (11th Cir. 2015); *United States v. Pfluger*, 685 F.3d 481, 485 (5th Cir. 2012). Congress was certainly aware of the impact of these Authorizations when it amended the WSLA in 2008 and made no changes to the tolling provision. Nor has it since.

V

We conclude the WSLA's restrictive relative clause—
"which is connected with or related to the prosecution of the
war or directly connected with or related to the authorized
use of the Armed Forces"—does not modify the first offense
category "involving fraud or attempted fraud" or the second
offense category involving "any real or personal property of
the United States."   18 U.S.C. § 3287.   Therefore, the
running of any statute of limitations applicable to the
WSLA's fraud and property offense categories—offense
categories under which Nishiie was charged—is suspended,
whether or not a nexus exists between these offenses and
either war or "authorized use of the Armed Forces."   We
therefore reverse the district court and remand for further
proceedings.

**REVERSED AND REMANDED.**

SCHROEDER, Circuit Judge, concurring:

I agree with the majority's conclusion that we must
reverse the district court.   This is because the legislative
history and the subsequent codification of a similar provision
in the Uniform Code of Military Justice, 10 U.S.C. § 843(f),
compel this result.   This history was unfortunately not
presented to the district court in the slim memoranda it
received.

I do not agree with the majority, however, that any canon
of statutory construction aids our decision.   The majority
relies on the "last antecedent" canon, counting the syllables
and dissecting the arrangement of the words of the series to
conclude, apparently because of the series' complexity, that

the modifier applies only to the last word in the series.  The district court diagramed the complex structure of the entire sentence to conclude that the "series qualifier" canon is more appropriate and that the modifier applies to all of the components.  *United States v. Nishiie*, 421 F. Supp. 3d 958, 968–71 (D. Haw. 2019).  These differing opinions serve to underscore Karl Llewellyn's observation seventy years ago that we can find a canon of interpretation to support any result.  *See* Karl N. Llewellyn, *Remarks on the Theory of Appellate Decision and the Rules or Canons of About How Statutes are to be Construed*, 3 Vand. L. Rev. 395 (1950).

The question before us is whether a clause, restricting the suspension of the statute of limitations to those crimes connected to ongoing military operations, applies to all three categories of crimes in the WSLA or just to the third category, contract crimes, that immediately precedes the clause.  What persuades me that the restriction applies only to the last, contract, category is this: the restrictive clause was part of the same July 1944 amendment that added the contract category of crimes.  When that category, with the limitation, was originally added, it was the second item in the provision.  When subsequent amendments re-ordered the list of crimes within the statute, the restrictive clause went with the contract category to become number three within the list.  WSLA, Pub. L. No. 80-772, § 3287, 62 Stat. 683, 828 (1948).  The important point to me is that the contract category and the limitation were enacted together, and they have stayed together despite reordering of the WSLA; they should therefore be applied together.  The "which" clause is a limitation that should not be applied to the types of crimes Congress identified separately, and without such limitation.

The majority correctly concludes that this reading is further supported by the subsequent codification of a nearly

identical statute in the Uniform Code of Military Justice, 10 U.S.C. § 843(f), where the formulation and sequence of paragraphs leave no doubt as to what the clause modifies.

The district court relied on expressions of intent by the proponents of a 2008 amendment. *Nishiie*, 421 F. Supp. 3d at 980. Congress there amended the WSLA to apply during "the authorized use of Armed Forces" as well as during officially declared wars. As the district court observed, the amendment's proponents intended to broaden the WSLA to apply to crimes related to military activities in Afghanistan and Iraq. *See id.* at 968–71. Yet the proponents did not express any intent to limit the WSLA to those particular military activities, and the amendment itself did not contain any such locational limitation.

We are thus now left with a statute that requires a connection to military activities only with respect to crimes related to contracts, and that suspends the statute of limitations for fraud and property crimes so long as the United States is engaged in authorized military activities anywhere.

The result is odd in today's world where we speak of "forever wars," but it was understandable in 1944 when the United States was engaged in a worldwide conflagration with a perceptible end. That is when Congress enacted the proviso with which we are concerned and which Congress has not changed.

For these reasons, I agree with the majority that the district court's judgment must be reversed.