**Electronically Filed**
**Intermediate Court of Appeals**
**CAAP-20-0000431**
**28-NOV-2022**
**08:05 AM**
**Dkt. 86 OP**

IN THE INTERMEDIATE COURT OF APPEALS

OF THE STATE OF HAWAIʻI

---o0o---

IN THE MATTER OF THE TAX APPEAL OF JEFFREY S. LINDNER
AND MOLOAʻA FARMS, LLC,
Taxpayers-Appellants-Appellees

NO. CAAP-20-0000431

APPEAL FROM THE TAX APPEAL COURT
(CASE NO. 1TX14-1-0241 (Consolidated with 1TX 14-1-0242;
1TX 14-1-0276 and 1TX 14-1-0277; 1TX 15-1-0326 and
1TX 15-1-0327))

NOVEMBER 28, 2022

HIRAOKA, PRESIDING JUDGE, NAKASONE AND MCCULLEN, JJ.

OPINION OF THE COURT BY NAKASONE, J.

Appellee-Appellant County of Kauaʻi (**County**), appeals
from the (1) Order Granting Taxpayers-Appellants' (**Taxpayers**)[1]
Motion for Summary Judgment (**MSJ**) as to the Issue of Whether the
Guinea Grass in Question Constitutes a Crop; and (2) Order

---

[1] In this appeal, Jeffrey S. Lindner (**Lindner**) and Moloaʻa Farms, LLC, are referred to collectively, as "Taxpayers." Lindner is a "member, owner, and controller" of Moloaʻa Farms, LLC.

Denying County of Kauaʻi-Appellee's Motion for Summary Judgment as to the Issue of Whether the Guinea Grass in Question Constitutes a Crop (collectively, **Orders**), both filed and entered on May 29, 2020, by the Tax Appeal Court of the State of Hawaiʻi (**Tax Appeal Court**).[2]

This appeal arises out of cross-motions for summary judgment filed by the parties over the County's denial of Taxpayers' application to have land used to grow guinea grass that is baled and sold as hay for cattle feed qualify as "agricultural use" for tax purposes.[3]  The parties dispute whether the guinea grass is a "crop" qualifying as "agricultural use," or whether it is a "forage crop" excluded from qualifying as "agricultural use."

The County raises a single point of error on appeal, that the Tax Appeal Court erred when it held that:

> "And on that narrow basis [*i.e.* 'that this grass is being raised and cultivated to put into bales of hay for the purpose of feeding cattle'], this Court concludes that the guinea grass in question does constitute a crop and therefore is agricultural use within the framework of the issue of this case."

---

[2]     The Honorable Gary W.B. Chang presided.

[3]     Taxpayers' MSJ explained that the issue is "important" because if "growing hay is an 'agricultural use,' property tax breaks are available for Taxpayer[s] through the Agricultural Dedication Program."  Under Kauaʻi County Code (**K.C.C.**) § 5A-9.1(b)(3)(2002), an agricultural dedication is taxed at 50% of the land's assessed value:

> (3) The dedication shall be recorded either with the Assistant Registrar of the Land Court or with the Bureau of Conveyances, as the case may be; and provided further that land situated within an agricultural district, which may be further subdivided, may be dedicated for a period of twenty (20) years and shall be taxed at fifty percent (50%) of its assessed value in such use, provided that such dedication is recorded with the Assistant Registrar of the Land Court or the Bureau of Conveyances, as the case may be.

(Emphasis added).

2

(Brackets and italics in original).[4] The County argues that the Tax Appeal Court erred in concluding that the guinea grass at issue here constituted a "crop" under K.C.C. § 5A-9.1(a)(1)[5] because guinea grass is an excluded "forage crop" under the Agricultural Dedication Program Rules (**ADPR**)[6] Rule §RP-2-2 (**2-2**),[7] and thus, does not qualify as "agricultural use." The

---

[4]     Taxpayers' counterstatement of the point of error contends that the issue before the Tax Appeal Court under the stipulated facts was:

> Whether hale koa, panicum, pangola, kikuyu, napier grass and similar forage crops used for soilage or silage, including but not limited to guinea grass, that grow on land zoned agriculture, and that are proposed to be cut and baled and made into hay, for the purpose described in the 2013 Application would qualify as an "agricultural use" under K.C.C. § 5A-9.1 and related administrative rules.

The County appeals the specific ruling made by the Tax Appeal Court, which is narrower than the Taxpayers' counterstatement above. Taxpayers did not file a cross-appeal. We address the specific contention that the County has raised in this appeal.

[5]     K.C.C. § 5A-9.1 (2002), entitled "Dedication of Lands," provides in pertinent part:

> (a) Definitions. As used in this Section:
>
> "Agricultural use" means the use of land on a continuous and regular basis that demonstrates that the owner intends to obtain a monetary profit from cash income received by:
>
> (1) Raising, harvesting, and selling crops; [(or)]
>
> (2) Feeding, breeding, managing, and selling of livestock, poultry, or honey bees, or any products thereof[.]

(Emphases added).

[6]     The ADPR are the administrative rules of the K.C.C. Director of Finance, and their purpose is to "implement the provisions" of K.C.C. § 5A-9.1 "relating to dedication of lands to [sic] agricultural use." ADPR Rule § RP-2-1 (**2-1**).

[7]     ADPR Rule §RP-2-2 (2002), defines "crop" as follows:

> "Crop" includes the actual production of specific agricultural or farm crops such as sugar cane, pineapple, papaya, eggplant, beans, pineapple, truck crops, grain or alfalfa, orchard crops, flowers, nursery or ornamental crops or the like, but excludes hale koa, panicum, pangola, kikuyu, napier grass and similar forage crops used for soilage or silage, and which are deemed t[o] be pasture uses within the urban district.

3

County also argues that the Tax Appeal Court erred in concluding that "putting guinea grass into bales of hay" for the purpose of feeding livestock constituted the act of "feeding" to qualify as an "agricultural use" under subsection (a)(2) of K.C.C. § 5A-9.1.

We hold that the Tax Appeal Court erred in granting Taxpayers' MSJ and denying the County's MSJ, where Taxpayers' activity did not constitute "agricultural use" under K.C.C. § 5A-9.1 as a matter of law, because (1) the guinea grass is an excluded "forage crop" under ADPR Rule 2-2 and is not a "crop" under subsection (a)(1); and (2) there was no actual "feeding" of livestock occurring on Taxpayers' land under subsection (a)(2).

## I. BACKGROUND

The parties agreed via stipulation to the following facts:

> 1. In 2013, [Taypayers] submitted an application (the "Application") to dedicate additional acreage on TMK 4-9-003-021-0000 (the "Parcel"). The Application was signed on June 26, 2013 and stamped by the County as received on June 28, 2013.
>
> 2. The Application sought to dedicate 32.406 acres on the Parcel to the ranching of off site feed for cattle.
>
> 3. The Application states that 32.406 acres of the Parcel was being leased at the time of the 2013 Application to Makoa Ranch Inc. DBA Farias Cattle Company as an offsite source for a stocker program for the purposes of growing feed to prepare the shipping of stocker calves, and that the haying operation had been in existence since the summer of 2012.

---

(Emphases added). "Forage" is defined as "food for animals especially when taken by browsing or grazing." *Forage*, <u>Merriam-Webster</u>, <u>https://www.merriam-webster.com/dictionary/forage</u> (last visited Oct. 3, 2022). "Silage" is defined as "fodder (such as hay or corn) converted into succulent feed for livestock through processes of anaerobic bacterial fermentation (as in a silo)." *Silage*, <u>Merriam-Webster</u>, <u>https://www.merriam-webster.com/dictionary/silage</u> (last visited Oct. 3, 2022). "Soilage" is defined as "green crops for feeding confined animals," and as "green fodder, esp[ecially] when freshly cut and fed to livestock in a confined area." *Soilage*, <u>Merriam-Webster</u>, <u>https://www.merriam-webster.com/dictionary/soilage</u> (last visited Oct. 3, 2022); *Soilage*, <u>Collins Dictionary</u>, <u>https://www.collinsdictionary.com/dictionary/english/soilage</u> (last visited Oct. 3, 2022).

4.     The County denied the Application by letter dated September 13, 2013.

5.     The letter states that the denial was because "Pursuant to Section 5A-9.1 of the Kauai County Code, the cultivation and harvesting of forage crops (hay) is not considered a dedicated agricultural use."

6.     On October 21, 2013, Lorna A. Nishimitsu, Counsel for Taxpayer[s], informed Deputy County Attorney Jennifer Winn, that the hay from [Taxpayers'] haying operation was sold for $60 a bale.

7.     The parties stipulate that hay produced from the type of grass growing on the [Taxpayers'] land is encompassed in the following:  "hale koa, panicum, pangola, kikuyu, napier grass and similar forage crops used for soilage or silage."

8.     The parties agree that the only issue to be resolved by the Court is whether hale koa, panicum, pangola, kikuyu, napier grass and similar forage crops used for soilage or silage, including but not limited to guinea grass, that grow on land zoned agriculture, and that are proposed to be cut and baled and made into hay, for the purpose described in the 2013 Application would qualify as an 'agricultural use' under K.C.C. § 5A-9.1 and related administrative rules.

(Emphases added).  As the stipulation indicates, it is undisputed that the hay made from the guinea grass in this case is a forage crop "used for soilage or silage."  Both sides filed opposition memoranda.

At the February 16, 2019 hearing on the cross-motions for summary judgment, the Tax Appeal Court ruled:

It is simply a question of whether the . . . guinea grass in question -- constitute a crop.  That's the only question.

And there is no issue of fact that this grass is being raised and cultivated to put into bales of hay for the purpose of feeding cattle.

And on that narrow basis, this Court concludes that the guinea grass in question does constitute a crop and therefore is agricultural use within the framework of the issue of this case.

So based upon that finding and conclusion, the Court will grant the [Taxpayers'] motion for summary judgment. But the Court will grant that motion without prejudice to a full litigation regarding all factors that are relevant to the question of whether a particular use of the property constitutes agricultural use.

This ruling is based upon the narrow issue to the exclusion of all other issues that bear upon the question of whether the guinea grass in question would constitute agricultural use.

But on this record, with the issue as it is framed, the Court must ignore all of the other requirements for agricultural use and simply focus upon whether the guinea grass in question as it is used constitutes a crop. And the Court finds that it does constitute a crop on this record.

So the Court will grant the [Taxpayers'] motion without prejudice to a full litigation of all relevant issues pertaining to what constitutes agricultural use.

Therefore, the Court will also deny the County's motion for summary judgment.

This timely appeal followed.

## II. STANDARD OF REVIEW

### A.     Summary Judgment

We review the Tax Appeal Court's grant of summary judgment *de novo*. Kaheawa Wind Power, LLC v. Cnty. of Maui, 135 Hawaiʻi 202, 206, 347 P.3d 632, 636 (App. 2014) (citing Kamikawa v. Lynden, 89 Hawaiʻi 51, 54, 968 P.2d 653, 656 (1998)). "[I]nasmuch as the facts here are undisputed and the sole question is one of law, we review the decision of the Tax Appeal Court under the right/wrong standard." Id. (citation and internal quotation marks omitted).

### B.     Statutory Interpretation

This case requires us to interpret the pertinent tax provisions of the K.C.C. and Administrative Rules of the Director of Finance. "When interpreting a municipal ordinance, we apply the same rules of construction that we apply to statutes." Ocean Resort Villas Vacation Owners Ass'n v. Cnty. of Maui, 147 Hawaiʻi 544, 553, 465 P.3d 991, 1000 (2020) (citing Rees v. Carlisle, 113 Hawaiʻi 446, 452, 153 P.3d 1131, 1137 (2007)). "[T]he general principles of construction which apply to statutes also apply to administrative rules." In re Hawaiian Elec. Co. Inc., 149 Hawaiʻi 343, 359, 489 P.3d 1255, 1271 (2021) (citation omitted).

6

We interpret statutes in accordance with the following:

> First, the fundamental starting point for statutory interpretation is the language of the statute itself. Second, where the statutory language is plain and unambiguous, our sole duty is to give effect to its plain and obvious meaning. Third, implicit in the task of statutory construction is our foremost obligation to ascertain and give effect to the intention of the legislature, which is to be obtained primarily from the language contained in the statute itself. Fourth, when there is doubt, doubleness of meaning, or indistinctiveness or uncertainty of an expression used in a statute, an ambiguity exists.

Ocean Resort Villas Vacation Owners Ass'n, 147 Hawaiʻi at 553, 465 P.3d at 1000 (quoting Rees, 113 Hawaiʻi at 452, 153 P.3d at 1137.

> In construing an ambiguous statute, "[t]he meaning of the ambiguous words may be sought by examining the context, with which the ambiguous words, phrases, and sentences may be compared, in order to ascertain their true meaning." [Hawaii Revised Statutes (**HRS**)] § 1-15(1) [(1993)]. Moreover, the courts may resort to extrinsic aids in determining legislative intent. One avenue is the use of legislative history as an interpretive tool.

Kaheawa Wind Power, LLC v. Cnty. of Maui, 146 Hawaiʻi 76, 88, 456 P.3d 149, 161 (2020) (brackets in original).


### III. DISCUSSION

#### A. The agricultural use subsections at issue here, (a)(1) and (a)(2) of K.C.C. § 5A-9.1, are separate ways to qualify for "agricultural use."

The Tax Appeal Court did not expressly state whether it was relying on subsection (a)(1) or (a)(2) in concluding there was "agricultural use" under K.C.C. § 5A-9.1, but used terminology from both subsections explaining its reasoning. The County argues that:

> [T]he Court's language indicates that its logical progression was as follows: (1) because the guinea grass was raised and cultivated to put into bales of hay for the purpose of feeding cattle, the guinea grass constitutes a crop, and (2) because the guinea grass constitutes a crop, it constitutes agricultural use. That logical progression is clearly erroneous for the reasons already stated: *i.e.,*

7

> guinea grass is not a crop, raising it and cultivating it
> for the purpose of feeding cattle does not make it a crop,
> and if it is not a crop, then it is not an agricultural use
> under K.C.C. § 5A-9.1(a)(1).
>
> . . . .
>
> . . . To the extent that the Tax Appeals Court was relying
> on K.C.C. § 5A-9.1(a)(2) for its holding, putting a forage
> crop like guinea grass into bales of hay is plainly not
> "feeding . . . livestock."

This argument is persuasive.

To the extent the Tax Appeal Court relied on "feeding" of cattle under subsection (a)(2) to determine whether the guinea grass constituted a "crop" under subsection (a)(1), this was erroneous, as the requirements in the subsections must be separately met.  K.C.C. § 5A-9.1(a) defines "agricultural use" as the "use of land on a continuous and regular basis that demonstrates that the owner intends to obtain a monetary profit from cash income received by" any of the nine types of activities set forth in subsection (1) through (9),[8] including raising

---

[8]     K.C.C. § 5A-9.1 states:

(a) Definitions: As used in this Section:

"Agricultural use" means the use of land on a continuous and regular basis that demonstrates that the owner intends to obtain a monetary profit from cash income received by:

    (1) Raising, harvesting, and selling crops;

    (2) Feeding, breeding, managing, and selling of livestock, poultry, or honey bees, or any products thereof;

    (3) Ranching of livestock;

    (4) Dairying or selling of dairy products;

    (5) Animal husbandry, provided that the exclusive husbandry of horses for recreational or hobby purposes shall not be considered an agricultural use under this Section;

    (6) Aquaculture;

    (7) Horticulture;

    (8) Participating in a government-funded crop reduction or set-aside program; **or**

crops; feeding, breeding, managing, selling, or ranching of livestock; dairying or selling dairy products; animal husbandry; aquaculture; horticulture; government-funded crop programs; or cultivating trees. K.C.C. § 5A-9.1 specifically uses the term "or" rather than "and" in separating subsections (1)-(9), which list various activities that may each qualify as "agricultural use." "Or" is disjunctive, "indicating an alternative[,] [and] [i]t usually connects words or phrases of different meanings permitting a choice of either." State v. Kalani, 108 Hawaiʻi 279, 284, 118 P.3d 1222, 1227 (2005) (citation and internal quotation marks omitted). Because K.C.C. § 5A-9.1 lists "raising, harvesting, and selling crops" in subsection (1) and "feeding" of livestock in subsection (2), the two activities are alternative ways to qualify for "agricultural use." See id. To the extent the Tax Appeal Court appears to have relied on the "feeding" of livestock in subsection (a)(2) to arrive at its conclusion that the activity in question constituted a "crop"

---

(9) Cultivating of trees on land that has been prepared by intensive cultivation and tilling, such as by plowing or turning over the soil, and on which all unwanted plant growth is controlled continuously for the exclusive purpose of raising such trees.

. . . .

Physical evidence such as grazing livestock, fences, artificial or natural windbreaks, water facilities, irrigation systems, or crops that are actually in cultivation, or indicia that farm management efforts such as weed control, pruning, plowing, fertilizing, fencing, or pest, insect, or disease control are occurring on the land, shall also be used as factors to determine whether the land is being used for any of the listed activities.

. . . .

For parcels involved in the ranching of livestock, the entire dedicated area shall have established fences and livestock present at the time of filing a petition to dedicate.

The term "agricultural use" shall not mean uses primarily as yard space, landscaped open areas, botanical gardens, or the raising of livestock or fruit trees primarily for home use.

(Emphases and bolding added).

under subsection (a)(1), this was erroneous.  K.C.C. § 5A-9.1(a)(2); see Kaheawa Wind Power, LLC, 135 Hawaiʻi at 206, 347 P.3d at 636.

    **B.**    **Growing and baling of hay done for the purpose of feeding livestock, where no actual feeding occurs on the land, does not constitute "feeding" of livestock under the plain meaning of K.C.C. § 5A-9.1(a)(2).**

        The County contends that putting guinea grass into bales of hay for the purpose of feeding does not constitute "feeding" necessary to qualify as "agricultural use" under K.C.C. § 5A-9.1(a)(2).  The County argues:

> The word "feeding" means "the act or process of eating or being fed." *Feeding*, Merriam-Webster (Sept. 16, 2020, 1:41 PM), https://www.merriam-webster.com/dictionary/feeding. Managing a feedlot[9]—where one obtains a monetary profit from cash income received by the act or process of feeding livestock—would qualify as feeding.  However, no livestock are "eating" or "being fed" while the landowner merely cuts her grass and puts it into bales of hay.

(Footnote in original).

        "In conducting a plain meaning analysis, this court may resort to legal or other well accepted dictionaries as one way to determine the ordinary meaning of certain terms not statutorily defined."  Wells Fargo Bank, N.A. v. Omiya, 142 Hawaiʻi 439, 449-50, 420 P.3d 370, 380-81 (2018) (citation and internal quotation marks omitted).  K.C.C. § 5A-9.1(a)(2) specifies that "agricultural use" means "the use of land on a continuous and regular basis that demonstrates that the owner intends to obtain a monetary profit from cash income received by: . . . (2) Feeding, breeding, managing, and selling of livestock, . . . or any products thereof[.]"  (Emphases added).  The "plain" and "ordinary" meaning of "feeding" livestock is that the actual feeding of livestock is occurring on the land zoned agricultural -- i.e., where livestock are eating or being fed on the land.

---

[9]    "A feedlot is defined as a 'plot of land on which livestock are fattened for market.' *Feedlot*, Merriam-Webster (Sept. 11, 2020, 11:48 AM), https://www.merriam-webster.com/dictionary/feedlot."

See Ocean Resort Villas Vacation Owners Ass'n, 147 Hawaiʻi at 553, 465 P.3d at 1000; Omiya, 142 Hawaiʻi at 449, 420 P.3d at 380.  Here, however, the stipulated facts reflect the land is used to grow guinea grass that is baled and made into hay for the purpose of feeding livestock.  There is no evidence of any "act or process of [cattle] eating [the hay] or being fed" the hay on the land proposed for agricultural dedication.  *Feeding*, Merriam-Webster, https://www.merriam-webster.com/dictionary/feeding (last visited Oct. 4, 2022).  Thus, there is no "agricultural use" based on "feeding" livestock, and K.C.C. § 5A-9.1(a)(2) plainly does not apply.  See Omiya, 142 Hawaiʻi at 449, 420 P.3d at 380.

**C.    Applying principles of statutory construction and grammar to the forage crop exclusion in ADPR Rule 2-2, the guinea grass is not a "crop" and does not constitute "agricultural use" under K.C.C. § 5A-9.1(a)(1).**

**1.    Grammatical analysis**

The definition of "crop" in ADPR Rule 2-2 excludes "***forage crops used for soilage or silage, and which are deemed t[o] be pasture uses within the urban district***" (**forage crop exclusion**).  (Italics and bolding added).  The parties stipulated that guinea grass is a "forage crop[] used for soilage or silage," but they disagree on the meaning of the remainder of the forage crop exclusion, including the comma, i.e. "[(comma)], and which are deemed t[o] be pasture uses within the urban district" (**comma-and-which clause**).

The County contends that the comma-and-which clause is a textbook example of a descriptive "non-restrictive clause" that provides "supplementary information about its antecedent -- forage crops used for soilage or silage."[10]  According to the

_____

[10]    The County relies on multiple cases in explaining that the comma-and-which clause is nonrestrictive.  See generally McCarthan v. Dir. of Goodwill Indus.-Suncoast, Inc., 851 F.3d 1076, 1126-27 (11th Cir. 2017) (Wilson, J., dissenting) (finding that a restrictive clause limits and defines the subject they modify, and unlike nonrestrictive clauses, they are not set off by commas); NACS v. Bd. of Governors of Fed. Rsrv. Sys., 746 F.3d 474, 485-87 (D.C. Cir. 2014) (finding that restrictive clauses are not set off by a

11

County, "[t]he nonrestrictive clause simply informs the reader that forage crops used for soilage or silage (like guinea grass) are deemed to be pasture uses in the urban district."[11]

On the other hand, Taxpayers contend that the use of the comma and the word "which" does not always signify a non-restrictive clause, and that it is not an "'ironclad grammatical rule.'" Instead, they argue, the court must look to the "'entire provision'" of ADPR Rule 2-2, and disregard its punctuation to discover its true intent.[12]

---

comma, and that "which" is often used with commas and "that" is not); Elementary v. Orleans Par. Sch. Bd., No. 16-2323, 2016 WL 5390393, at *6 (E.D. La. Sept. 27, 2016) (holding that a clause was nonrestrictive because the clause added detail to the sentence, and if removed, would not change the meaning of the sentence, and also matched the intent of the provision); Maizner v. Haw., Dept. of Educ., 405 F.Supp.2d 1225, 1235 (D. Haw. 2005) (finding that restrictive clauses are relative clauses that limit the meaning of a modified noun); Mass. Mut. Life Ins. Co. v. Aritech Corp., 882 F.Supp. 190, 195 (D. Mass. 1995) (holding that a provision was nonrestrictive because the clause was not set off by commas which also matched the intent of the provision).

[11] Taxpayers claim that the County's comma-and-which clause argument was not raised below and is waived. The County maintains that this argument was not waived because, inter alia, the "crux of the issue" and the "thrust of the County's argument remain the same" -- that the comma-and-which clause is non-restrictive.

In Jijun Yin v. Aguiar, 146 Hawaiʻi 254, 260 n.17, 463 P.3d 911, 917 n.17 (2020), the Supreme Court of Hawaiʻi held that this court erred when it was tasked with interpreting a statute and failed to consider legislative history and "give effect to the intention of the legislature" on grounds of waiver where the arguments were not preserved below. The supreme court stated:

> [t]o the extent that the ICA did not consider the legislative history or intent of the statutes because Yin did not raise the issues before the trial court, we have previously held that appellate courts may resolve a properly preserved issue by answering a threshold or dispositive question of law, even though the argument is not advanced by the parties.

Id. (citations, internal quotation marks, and brackets omitted). Thus, in applying ADPR Rule 2-2, we are not precluded from considering the County's nonrestrictive comma-and-which clause argument that was not specifically raised below. Id.

[12] Taxpayers rely on the following cases to support its argument that the comma-and-which clause should be treated as a restrictive clause. See generally Food and Drug Admin. v. Brown & Williamson Tobacco Corp., 529 U.S. 120, 133 (2000) (holding that the court must interpret words of a statute in context of the entire provision); U.S. v. Transocean Deepwater Drilling, Inc., 767 F.3d 485, 494-95 (5th Cir. 2014) (citations omitted) (holding that courts

Generally, while the absence of a comma followed by "which" signifies a restrictive clause, the presence of a comma followed by "which," as in this case, typically signifies a nonrestrictive clause.  See United States v. Nishiie, 996 F.3d 1013, 1021-22 (9th Cir. 2021) (construing a provision that contained the word "which" with no preceding comma).[13]  The Nishiie court stated that:

> [a] clause is said to be restrictive (or defining) if it provides information that is essential to understanding the intended meaning of the rest of the sentence.  Restrictive relative clauses are usually introduced by *that* (or by *who/whom/whose*) and are never set off by commas from the rest of the sentence. .[ ].[ ]. A clause is said to be nonrestrictive (or nondefining or parenthetical) if it could be omitted without obscuring the identity of the noun to which it refers or otherwise changing the intended meaning of the rest of the sentence.  Nonrestrictive relative clauses are usually introduced by *which* (or *who/whom/whose*) and are set off from the rest of the sentence by commas.

Id. at 1021-22 (citing The Chicago Manual of Style § 6.27 (17th ed. 2017) (ebook)) (emphasis added) (ellipses in original); see also Gold Coast Neighborhood Ass'n v. State, 140 Hawaiʻi 437, 473-74, 403 P.3d 214, 250-51 (Nakayama, J., dissenting) (2017) (noting that the majority's construction "ignores the rest of the sentence immediately succeeding the phrase at issue: 'a seawall such as that which is in question here which is used as a public thoroughfare[.]'" and explaining that "[t]he underlined phrase is a non-restrictive relative clause, meaning that it defines the

_____

should not be strictly guided by grammar in interpreting a statute, but must consider the entire provision, and may even disregard a punctuation to render its true meaning); NACS, 746 F.3d at 487 (holding that even though Congress used the word "which" rather than "that," the clause was still restrictive).

[13]    In Nishiie, the Ninth Circuit was tasked with interpreting the Wartime Suspension of Limitations Act of the United States Code, where the court had to determine whether a clause that started with the word "which," was intended to restrict the entire Act.  Id. at 1015-16.  The Nishiie court found the "which" clause to be restrictive to the immediate preceding phrase: "(3) committed in connection with the negotiation, procurement, award, performance, payment for, interim financing, cancelation, or other termination or settlement, of any contract, subcontract, or purchase order which is connected with or related to the prosecution of the war or directly connected with or related to the authorized use of the Armed Forces[.]"  Id. at 1020 (emphasis added).

antecedent noun–the seawall.") (citing William Strunk Jr. & E.B. White, <u>The Elements of Style</u> 3-4 (3d ed. 1979)).

Here, both the structure and substance of the comma-and-which clause indicate that it is a nonrestrictive relative clause.[14]  <u>See</u> <u>Nishiie</u>, 996 F.3d at 1021-22.  The structure of the comma-and-which clause is consistent with a nonrestrictive relative clause, because it is "introduced by which" and is "set off from the rest of the sentence" by a comma.  <u>Id.</u> Substantively, the comma-and-which clause is nonrestrictive because it is "nondefining," where it could be "omitted without obscuring the identity" of the noun (forage crops) to which it refers.  <u>Id.</u>  The comma-and-which clause is nonrestrictive because it is "parenthetical" in nature, where it could be removed without changing the intended meaning of the rest of the forage crop exclusion.  <u>Id.</u>

A grammatical analysis, while helpful to discern the meaning of the comma-and-which clause, is not conclusive, however.  "[W]hile the rules of grammar are not irrelevant, [courts] should not be guided by a single sentence or member of a sentence[,]" but must "look to the provisions of the whole law, and to its object and policy."  <u>Transocean Deepwater Drilling, Inc.</u>, 767 F.3d at 494 (internal quotation marks omitted) (quoting <u>U.S. Nat'l Bank of Or. v. Indep. Ins. Agents of Am., Inc.</u>, 508 U.S. 439, 455 (1993)); <u>see</u> <u>Educators Ventures, Inc. v. Bundy</u>, 3 Haw.App. 435, 439, 652 P.2d 637, 639 (1982) ("We do not believe that the placement of a comma in HRS § 467-16 should be determinative of the intent of the legislature in its enactment.").  Thus, in addition to a grammatical analysis, we must look to the intent of the law, and apply statutory construction principles.  <u>See</u> <u>Ocean Resort Villas Vacation Owners</u>

---

[14]     "A relative clause is 'an adjective clause introduced by a relative pronoun expressed or suppressed, relative adjective, or relative adverb and having either a purely descriptive force (as in *John, who often tells fibs*) or a limiting one (as in *boys who tell fibs*).'"  <u>Westchester Gen. Hosp., Inc. v. Evanston Ins. Co.</u>, 48 F.4th 1298, 1306 n.2 (11th Cir. 2022) (citing *Relative Clause*, <u>Merriam-Webster</u>, http://www.merriam-webster.com/dictionary/relative% 20clause (last visited Aug. 18, 2022)).

Ass'n, 147 Hawaiʻi at 553, 465 P.3d at 1000; <u>Kaheawa Wind Power, LLC</u>, 146 Hawaiʻi at 88, 456 P.3d at 161; <u>Transocean Deepwater Drilling, Inc.</u>, 767 F.3d at 494.

### 2. Statutory construction analysis

***ADPR Rule 2-2 is ambiguous.*** The ADPR set forth rules of construction in Rule §RP-2-14 (**2-14**), which provide:

> §RP-2-14    Rules of construction.
>
> . . . .
>
> (c) Words to have their usual meaning. Except as defined in K.C.C. Sec. SA-9.5 [(sic)], the words of these rules are generally to be understood in their most known and usual significance, without attending so much to their literal and strictly grammatical construction, as to their general or popular use or meaning.
>
> (d) Construction of ambiguous context. Where words in these rules are ambiguous:
>
> (1) The meaning of the ambiguous words may be sought by examining the context with which the ambiguous words, phrases, and sentences may be compared, in order to ascertain their true meaning;
>
> (2) The reason and spirit of the law, and the cause which induced the Council to enact it, may be considered to discover their true meaning; and
>
> (3) Every interpretation which leads to an absurdity shall be rejected.

"[W]here the statutory language is plain and unambiguous, our sole duty is to give effect to its plain and obvious meaning." <u>Ocean Resort Villas Vacation Owners Ass'n</u>, 147 Hawaiʻi at 553, 465 P.3d at 1000 (citation omitted). "[W]hen there is doubt . . . or uncertainty of an expression used in a statute, an ambiguity exists." <u>Id.</u> (citation omitted). "Put differently, a statute is ambiguous if it is capable of being understood by reasonably well-informed people in two or more different senses." <u>Gillan v. Gov't Emps. Ins. Co.</u>, 119 Hawaiʻi 109, 117, 194 P.3d 1071, 1079 (2008) (citations and internal quotation marks omitted).

The County contends that ADPR Rule 2-2 "plainly" indicates that all "forage crops used for soilage or silage" are

"categorically excluded" from the definition of "crop."[15]  On the other hand, Taxpayers contend that the forage crop exclusion only applies in the urban district, and urges that:  the comma-and-which clause "plainly" requires that the excluded forage crops be both "used for soilage or silage" **and** a "pasture use within the urban district," because the word "and" signals an independent requirement.  Taxpayers argue:  "if you grow forage crops for ['soilage or silage'] in the urban district, it does not qualify as a 'crop'; if you grow forage crops for ['soilage or silage'] in the rural district, it does."

Here, the forage crop exclusion in ADPR Rule 2-2 reads:

> "Crop" includes the actual production of specific agricultural or farm crops such as sugar cane, pineapple, papaya, eggplant, beans, pineapple, truck crops, grain or alfalfa, orchard crops, flowers, nursery or ornamental crops or the like, but **<u>excludes</u>** hale koa, panicum, pangola, kikuyu, napier grass and similar **<u>forage crops used for soilage or silage</u>, <u>and which are deemed t[o] be pasture uses within the urban district.</u>**

(Emphases and bolding added).

The word "and" is not defined in ADPR Rule 2-2, but must be accorded its "most known and usual" meaning.  ADPR Rule 2-14(c).  "And" is defined as a word to "indicate connection or addition," "express logical modification, . . . or <u>supplementary explanation</u>."  *And*, <u>Webster's Ninth New Collegiate Dictionary</u> (1987) (emphasis added).  Because ADPR Rule 2-2 uses the word "and" immediately following the comma in the comma-and-which clause, it is not immediately apparent whether the use of the word "and" signals an "addition[al]" requirement or a "supplementary explanation" for the excluded forage crops.  <u>Id.</u>

"Deemed" is not defined in ADPR Rule 2-2, but is generally defined as to "come to think or judge: Consider"; and "to hold as an opinion[,] think[,] regard as[.]"  *Deem*, <u>Merriam-Webster</u>, https://www.merriam-webster.com/dictionary/deem (last

---

[15]     The Tax Appeal Court did not rule on what the language of ADPR Rule 2-2 meant.  The Tax Appeal Court only held that the guinea grass in question was a "crop" and was "agricultural use."

visited Sept. 23, 2022); *Deem*, Dictionary.com, https://www.dictionary.com/browse/deem (last visited Oct. 7, 2022). In State v. Nesmith, "deem" was defined as "[t]o treat (something) as if (1) it were really something else, or (2) it had qualities that it does not have [.]" 127 Hawaiʻi 48, 71, 276 P.3d 617, 640 (2012) (Acoba, J., concurring and dissenting) (citing Black's Law Dictionary 446 (8th ed. 2004)) (brackets and parentheses in original). Considering these definitions of "deemed," the forage crop exclusion can be read as "forage crops used for soilage or silage, and which are [considered or regarded as] pasture uses within the urban district." The use of the word "deemed" is descriptive in nature, describing a "quality" of the excluded forage crops. See id. This reading is also consistent with our conclusion supra that the comma-and-which clause is a nonrestrictive relative clause that is "nondefining" and "parenthetical" in nature. See Nishiie, 996 F.3d at 1022.

While the use of the word "deemed" is consistent with reading the comma-and-which clause as nonrestrictive, the minds of "reasonably well-informed people" could still differ as to whether the comma-and-which clause contains an additional requirement of, or a supplementary explanation for, the forage crop exclusion. Gillan, 119 Hawaiʻi at 117, 194 P.3d at 1079. As there is doubt about how to apply the forage crop exclusion because of the uncertainty on how to interpret comma-and-which clause, an ambiguity exists. See Ocean Resort Villas Vacation Owners Ass'n, 147 Hawaiʻi at 553, 465 P.3d at 1000.

*The history of ADPR Rule 2-2.* Courts may use extrinsic aids, including legislative history, to determine legislative intent. Kaheawa Wind Power, LLC, 146 Hawaiʻi at 88, 456 P.3d at 161. ADPR Rule 2-2 is a county program rule, and we must look to the "reason and spirit of the law, and the cause which induced the Council to enact it," to discover its "true meaning[.]" ADPR Rule 2-14(d)(2). In this case, however, legislative history such as committee reports or recorded remarks by legislators that would typically evidence intent are not available. In

17

determining legislative intent, we may consider previous versions and amendments of a statute. See State v. Wheeler, 121 Hawaiʻi 383, 392 n.11, 219 P.3d 1170, 1179 n.11 (2009) ("The legislative history from the 2000 revision does not specifically explain why the definition of 'operates' was added, although it appears to have been part of the general purpose of making the statute more uniform and consistent."); see also Ciganek v. Portfolio Recovery Assocs., LLC, 190 F.Supp.3d. 908, 916 (N.D. Cal. 2016) ("Prior versions of a bill are among the forms of legislative history that the Court may consider."); 73 Am. Jur. 2d Statutes § 64 (2022) ("[T]he courts may consider, among other things . . . earlier versions of the statute[.]").  Previous versions of ADPR Rule 2-2 are available, and as we explain infra, this legislative history suggests that the comma-and-which clause serves to inform that forage crops are construed to be a pasture use in the urban district.[16]

ADPR Rule 2-2 was drafted in 1981, then later amended in 1988, 1999, and 2002.  The 1981 and 1988 versions (**1980s version**) of ADPR Rule 2-2 identically defined "crop" as

> the actual production of specific agricultural or farm crops such as sugar cane, pineapple, truck crop, grain or alfalfa, orchard crops, flowers, nursery or ornamental crops or the like in the manner provided in these regulations; <u>but excludes</u> koa haole, panicum, pangola, kikuyu, napier grass or other like <u>forage crops used for soilage or silage</u> **deemed to be pasture uses within the urban district**.

(Emphases and bolding added).  This 1980s version of the Rule continued to use the word "deemed," there was no use of the word "and," and notably, there was no "comma and which."  The comma-and-which clause was not included until 1999.  As discussed

---

[16]     The County attached the prior versions of the ADPR Rule 2-2 in its opposition memorandum below to the Tax Appeal Court, arguing that because there was no "conjunction (, and) between the words 'silage' and 'deemed,'" there was therefore no "requirement" that the guinea grass must also be a pasture use within the urban district.  The County urged:  "This sentence in the Rule merely indicates" that the forage crops "are excluded and are deemed (called) pasture uses in the urban district and that soilage and silage (despite their being precut and not, strictly speaking, grazeable) are deemed pasture uses."

supra, "deemed" is a synonym for "considered" or "regarded as." *Deem*, supra.  The 1980s version of ADPR Rule 2-2 and the definition of "deem" indicate that forage crops were "consider[ed]" or "deemed to be pasture uses within the urban district."  Id.; ADPR Rule 2-2 (emphasis added).  The language used in the 1980s version evidences the drafters' intent to convey a quality of forage crops used for soilage or silage -- that such forage crops are "considered" or "deemed" to be "pasture uses within the urban district"; this is descriptive language.  *Deem*, supra; ADPR Rule 2-2.  It would not make sense that the subsequently added comma-and-which clause was intended to convert the "deemed to be pasture uses within the urban district" language into an additional requirement for a forage crop, rather than continuing to simply inform the reader that forage crops used for soilage and silage are deemed to be pasture uses within the urban district.  Thus, the legislative history suggests that the comma-and-which clause is intended to be descriptive, conveying supplementary information about the forage crop exclusion rather than imposing an additional requirement for it.  See Kaheawa Wind Power, LLC, 146 Hawaiʻi at 88, 456 P.3d at 161.

   ***Avoiding superfluous interpretation of ADPR Rule 2-2.*** "[W]hen construing a statute, courts are bound to give effect to all parts of a statute, and no clause, sentence, or word shall be construed as superfluous, void, or insignificant if a construction can be legitimately found which will give force to and preserve all words of the statute."  Adams v. CDM Media USA, Inc., 135 Hawaiʻi 1, 18, 346 P.3d 70, 87 (2015) (emphasis added) (citation and internal quotation marks omitted).  The County and Taxpayers both contend that each other's reading of the Rule renders the comma-and-which clause superfluous.

   Taxpayers argue that the County's interpretation of the forage crop exclusion as a categorical exclusion applying across-the-board, and not just to the urban district, renders the comma-and-which clause superfluous.  Taxpayers assert:  "[i]n other

words, if all the grasses at issue are excluded from the definition, then why add the phrase 'and which are deemed t[o] be pasture uses within the urban district?'"  Taxpayers claim that "[w]ithout a credible explanation" for the comma-and-which clause, "it is superfluous under the County's interpretation."

The County claims that its interpretation would not render the comma-and-which clause superfluous because it helps to close a "loophole" in ADPR Rule §RP-2-5 (**2-5**),[17] where an urban district landowner could argue that is entitled to an agricultural dedication for forage crops fed to livestock because such use should constitute "specific livestock use" under ADPR Rule 2-5.  The County explains, however, that ADPR Rule 2-2 serves to inform landowners that "forage crops used for soilage or silage" are "deemed to be pasture uses in the urban district," and "pasture uses" are clearly prohibited in the urban district under ADPR Rule 2-5.  Thus, according to the County, the comma-and-which clause clarifies that forage crops used for feeding livestock are still excluded from being "crops" for agricultural dedication.  This argument is persuasive.

ADPR Rule 2-5 indicates that "specific livestock uses" in the urban district include "feed lots" where livestock are fed on the land, but the Rule also contains an express prohibition on "grazing or pasturing" on agricultural lands in the urban district.  Read together, ADPR Rule 2-2 serves to prevent "forage

---

[17]    ADPR Rule 2-5, entitled "Special requirements for dedications in the various districts," addresses, *inter alia*, special requirements for lands dedicated in the urban district for crop cultivation and ranching of livestock.  The requirements for ranching of livestock discuss specific permitted and non-permitted livestock uses for such lands, and provide as follows:

> (b) Lands dedicated in urban district for the ranching of specific livestock shall satisfy the following requirements:

> (1) The land to be dedicated must be used for specific livestock uses, such as feed lots, calf-raising, and similar operations in dairy, beef, swine, poultry, and aquaculture, but excluding open grazing and pasturing.

(Emphases added).

crops used for soilage or silage" from qualifying as "specific livestock use" under ADPR Rule 2-5, because ADPR Rule 2-2 expressly specifies that "forage crops used for soilage or silage" are "deemed t[o] be pasture uses within the urban district."  Viewed in *pari materia*, ADPR Rule 2-2's language that forage crops used for soilage and silage are deemed a pasture use is consistent with ADPR Rule 2-5's express prohibition on "pasturing" in the urban district.  See Omiya, 142 Hawaiʻi at 450, 420 P.3d at 381 ("[S]tatutes that are in *pari materia* may be construed together," and "[w]hat is clear in one statute may be called upon in aid to explain what is doubtful in another.") (cleaned up).  The comma-and-which clause is thus not "superfluous" because it informs a landowner of a quality or description of the excluded "forage crops."  Without the comma-and-which clause, an urban district landowner seeking an agricultural dedication would not be informed that "forage crops used for soilage or silage" are "deemed to be pasture uses within the urban district."  ADPR Rule 2-2.  The County's construction has merit, as it "preserve[s] all words" of the forage crop exclusion in ADPR Rule 2-2.  Adams, 135 Hawaiʻi at 18, 346 P.3d at 87.

The County argues that Taxpayers' interpretation that the forage crop exclusion only applies in the urban district renders the words "deemed t[o] be pasture uses" superfluous.  In other words, under Taxpayers' interpretation the exclusion would read:  "but excludes . . . forage crops used for soilage or silage . . . within the urban district."  ADPR Rule 2-2. Taxpayers posit that an explanation for the inclusion of the phrase "deemed t[o] be pasture uses" is because the County "could potentially grant" other agricultural uses for "the grasses at issue" in the urban district, such as "biomass that are used in the production of alternative, green energy."  This argument is unavailing, however, because the ADPR do not allow agricultural

dedication for biomass grasses.  See K.C.C. § 5A-9.1(i)[18] (prohibiting agricultural land dedication for "commercial alternative energy facilities[.]").  Taxpayers' interpretation renders the words "deemed t[o] be pasture uses" "insignificant" and "superfluous," and it is unpersuasive.  Adams, 135 Haw. at 18, 346 P.3d at 87 (citations omitted).

*A rational interpretation of ADPR Rule 2-2.*  "[A] statutory interpretation that is rational, sensible, and practicable is preferred to one which is unreasonable, impracticable[,] inconsistent, contradictory, and illogical." Moranz v. Harbor Mall, LLC, 150 Hawaiʻi 387, 398, 502 P.3d 488, 499 (2022) (citations, ellipses, and internal brackets omitted). The ADPR purpose section states:  "These rules are further intended to ensure that the provisions of K.C.C. Sec. [5]A-9.1 are applied in a uniform and equitable manner."  ADPR Rule 2-1.

> The County argues that:

> . . . the nonrestrictive clause in the definition of "crop" in ADPR § RP-2-2, . . . definitively informs landowners that forage crops used for soilage or silage "are deemed t[o] be pasture uses within the urban district."  Pasture uses are expressly prohibited in the urban district under K.C.C. § 5A-9.1(l), the very same provision an urban district landowner might otherwise hope to rely on to obtain a dedication for a "specific livestock use."  The nonrestrictive clause thus ensures that a landowner in the urban district cannot evade the "crop" requirement imposed by K.C.C. § 5A-9.1(a)(1) and receive an agricultural dedication for forage crops under K.C.C. § 5A-9.1(l).  The nonrestrictive clause thus closes a potential loophole and preserves the drafters' intent to prohibit all landowners from receiving agricultural dedications for forage crops used for soilage and silage.  In so doing, the nonrestrictive clause "ensure[s] that the provisions of

---

[18]    K.C.C. § 5A-9.1(i) states in pertinent part:

(i) Cancellation Without Rollback Taxes and Penalties.  Notwithstanding any provision in this Section to the contrary, the occurrence of any of the following events shall cause the dedication to be canceled without the imposition of any roll back taxes or penalties whatsoever:

. . . .

(3) The dedicated land, or portion thereof, has been designated and approved for commercial alternative energy facilities and future land assessments will be valued according to the land's industrial market value.

> <u>K.C.C. Sec. [5]A-9.1 are applied in a uniform and equitable
> manner</u>", consistent with the purpose of the rules.  ADPR §
> RP-2-1.  Landowners who are raising, harvesting, and selling
> forage crops — whether in the urban district or the
> agricultural district — will be treated uniformly and, thus,
> fairly and equally.

(Emphases added).

Taxpayers assert that the County's interpretation of the forage crop exclusion as applying to all districts is inconsistent with the intent of the ADPR, as its purpose is to "promote agricultural activity on Kauai, . . . specifically the raising of cattle, by providing tax breaks."  Taxpayer argues that "[u]nder the County's inconsistent definition . . . you can get a dedication for pasture in the rural district, but you cannot get one for growing forage crops for feeding livestock in the rural district on the exact same parcel," which "makes no sense."  However, the raising of cattle already independently qualifies for a tax break as a clearly permitted type of "agricultural use" under K.C.C. § 5A-9.1(a)(2) and (a)(3).[19]  The County provides a rational explanation for the different tax treatment of pasturing versus forage crops that are grown and baled into hay, and the further distinction in the Rules based on the location of these activities:

> These are plainly different activities (pasturing requires
> the presence of livestock, hay baling does not), and so it
> should not be surprising if there are some differences in
> how they are regulated.  For example, the drafters might
> have believed that merely cutting one's wild grass and
> baling some hay was not worthy of an agricultural
> dedication-no matter the location.  On the other hand, the
> drafters might have believed that pasturing cattle (which
> presumably requires, at the very least, the owner to
> purchase and monitor the herd) is worthy of an agricultural
> dedication, albeit based on location.  They might have
> believed that it made good sense to pasture cows in the
> rural district (*i.e.* space to roam), but little sense to
> pasture cows in the urban district (*i.e.* inappropriate use
> of congested space).

---

[19]    K.C.C. § 5A-9.1 lists "[f]eeding, breeding, managing, and selling of livestock" in subsection (a)(2), and "[r]anching of livestock" in subsection (a)(3).

We note that ADPR Rule 2-2's "crop" definition, aside from the single reference to "pasture uses within the urban district," does not otherwise draw any distinctions based on the location of the land subject to dedication, i.e. urban district or non-urban district.  It does not seem logical or rational to read the "crop" definition as including a geographic "urban district" requirement to exclude forage crops from the definition of "crop."  In light of the rationale provided by the County, it is "rational" to not limit the forage crop exclusion to the urban district.  See Moranz, 150 Hawaiʻi at 398, 502 P.3d at 499.  Applying the forage crop exclusion across-the-board to both urban and non-urban districts is consistent with the express intent of the ADPR to apply K.C.C. § 5A-9.1 "in a uniform and equitable manner."  ADPR Rule 2-1.

In summary, based on the application of the rules of grammar and statutory construction set forth above, we conclude that the language, "[comma] and which are deemed t[o] be pasture uses within the urban district," describes a feature of the forage crop exclusion rather than an additional requirement for it.  This is a "rational, sensible, and practicable" interpretation that is also consistent with the history of the rule.  Moranz, 150 Hawaiʻi at 398, 502 P.3d at 499; see Ocean Resort Villas Vacation Owners Ass'n, 147 Hawaiʻi at 553, 465 P.3d at 1000.  Therefore, we hold that, as a matter of law, the guinea grass at issue is an excluded "forage crop" under ADPR Rule 2-2, and not a "crop" qualifying as "agricultural use" under K.C.C. § 5A-9.1(a).  See Kaheawa Wind Power, LLC, 135 Hawaiʻi at 206, 347 P.3d at 636.  The Tax Appeal Court erred in granting Taxpayers' MSJ and denying the County's MSJ, where Taxpayers' activity does not constitute "agricultural use."  See id.

## IV. CONCLUSION

For the foregoing reasons, we vacate the (1) Order Granting Taxpayers-Appellants' Motion for Summary Judgment as to the Issue of Whether the Guinea Grass in Question Constitutes a

Crop; and (2) Order Denying County of Kauaʻi-Appellee's Motion for Summary Judgment as to the Issue of Whether the Guinea Grass in Question Constitutes a Crop, both filed and entered on May 29, 2020 by the Tax Appeal Court of the State of Hawaiʻi, and remand for further proceedings consistent with this Opinion.

On the briefs:

Andrew S. Michaels,
Deputy County Attorney,
for Appellee-Appellant
County of Kauaʻi.

Nicholas A. Kacprowski,
for Taxpayers-Appellants-
Appellees.

/s/ Keith K. Hiraoka
Presiding Judge

/s/ Karen T. Nakasone
Associate Judge

/s/ Sonja M.P. McCullen
Associate Judge